# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RITA A. RIED, :

        Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant. :

Case No. 3:08-cv-151

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on July 3, 2003, alleging disability from June 4, 2006. (Tr. 51-53; 233-35). Plaintiff's applications were denied initially and on reconsideration. (Tr. 33-36, 37-38; 237-40, 242-45). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 248-72), who determined that Plaintiff is not disabled. (Tr. 10-25). The Appeals Council denied Plaintiff's request for review, (Tr. 8-9), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe degenerative disc disease of the cervical spine, left carpal tunnel syndrome, thyroid disorder, and diabetes, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 17, ¶ 3; 19, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to lift up to 20 pounds occasionally and ten pounds frequently, that she is limited to inside work, and that she must avoid climbing ladders/scaffolds or working at unprotected heights and therefore she is limited to a reduced range of light work. (Tr. 20, ¶ 5). Judge Padilla then found that Plaintiff is able to perform her past relevant work as a teacher, health care aid, or fast food worker. (Tr. 24, ¶ 6). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. *Id.*, ¶ 7; Tr. 25.

Treating physician Dr. Paxton reported on September 14, 2003, that he had been treating Plaintiff for 25 years, that she had diabetes and asthma and had small strokes due to poor diabetic control, and that she had a significant deterioration of her diabetes over the past year. (Tr. 116-17). Dr. Paxton also reported that Plaintiff had airborne allergies, that she refused to take

4

insulin because she had a severe phobia for needles, that when her sugar was out of control she had a severe mental impairment and was unable to remember many things, understand what was going on with her disease, and that physically she seemed to be doing better. *Id.* Dr. Paxton noted that Plaintiff was impaired in her strength, was quite frail, that her memory seemed to be a little bit better, and that because of her respiratory difficulties, it was difficult for her to do any type of outside work where there would be dust or smoke. *Id.*

Examining psychologist Dr. Schulz reported on July 28, 2004, that Plaintiff has never been treated for psychological problems, has a bachelor's degree in social work, that there was nothing remarkable about her manner of speech, her affect was appropriate and congruent, her motor activity was calm, and that her mood was euthymic. (Tr. 123-28). Dr. Schulz also reported that Plaintiff's memory was within an adequate range, she was oriented and alert, and that her judgment was sufficient to make life decisions and conduct her own living arrangements. *Id.* Dr. Schulz identified Plaintiff's diagnoses as depressive disorder NOS and he assigned her a GAF of 62. *Id.* Dr. Schulz opined that Plaintiff's ability to get along with others was minimally impaired, her ability to understand, remember, and follow instructions was minimally impaired, her ability to maintain concentration and attention to perform simple repetitive tasks was minimally impaired, and her ability to withstand the stress and pressures associated with day-to-day work activity was minimally impaired. *Id.*

An October 20, 2004, MRI of Plaintiff's cervical spine revealed a small right disc osteophyte complex at C4-5 causing mild to moderate right neural stenosis, a right lateral disc bulge at C5-6, and a lateral disc osteophyte complex at C7-T1 which displaced the left C8 nerve root. (Tr. 148-49).

An October 29, 2004, EMG revealed moderate to severe carpal tunnel syndrome, mild peripheral neuropathy in the left arm muscles, and mild neurogenic changes in the cervical paraspinal muscles. (Tr. 150-54).

Plaintiff consulted with neurosurgeon Dr. Cole in November, 2004, at which time Dr. Cole reported that Plaintiff had a normal exam of the cervical spine, an abnormal sensory exam in the left C6 root distribution, normal reflexes, and normal muscle bulk. (Tr. 178-85). Dr. Cole also reported that his impression was neuroforaminal stenosis at C4-5 on the right and C5-6 on the right, left C6 radiculitis, and spondylosis. *Id.* Dr. Cole recommended physical therapy and Plaintiff attended seven sessions. (Tr. 154-59). On December 17, 2004, Dr. Cole reported that Plaintiff had finished a course of physical therapy and that it had not helped her. (Tr. 178-85). Dr. Cole also reported that Plaintiff's overall status had not changed and he recommended cervical epidural steroid injections. *Id.* Plaintiff underwent those injections. (Tr. 160).

Plaintiff underwent a total thyroidectomy on May 13, 2005, for treatment of hyperthyroidism, which Dr. Demeter performed. (Tr. 164-75).

Treating physician Dr. Smith reported on July 28, 2005, that she had been treating Plaintiff since March 10, 2005, that Plaintiff had multiple medical problems including type II diabetes, uncontrolled hypertension, previous TIAs, hypothyroid after thyroidectomy, asthma, diarrhea, and chronic neck and back pain. (Tr. 186-97). Dr. Smith also reported that Plaintiff's disability primarily resulted from generalized poor health with multi-system involvement which prohibited her from reliably attending even a part-time job, that she required frequent rest breaks throughout the day which would severely impair her productivity and functionality as an employee, and would require her to be absent from work to an extent that would prohibit her from any regular

6

employment. *Id.* Dr. Smith opined that Plaintiff had no impairment in her abilities with respect to social interaction, mild to marked impairments in her ability to concentrate, mild to marked impairment with respect to adaptation, and that her limitations were primarily due to her generalized poor physical health. *Id.*

Treating endocrinologist Dr. Jawadi reported on August 5, 2005, that he had been treating Plaintiff for more than a year, that he was following her for diabetes and hyperthyroidism, that she had recently undergone a thyroidectomy, and that she was "not up to par in regards to the instructions" and that on several occasions he had to repeat himself to make sure Plaintiff understood how to take her medications, monitor her blood sugars, and to keep records. (Tr. 198-203). Dr. Jawadi also reported that Plaintiff had felt very tired and weak and exhausted on many occasions, that she did not have any weakness or any other physical impairment as such on superficial appearance, but that if you "give her a task to do she may not be able to do it that well." *Id.* Dr. Jawadi noted that Plaintiff was not a candidate for a full-time job or even a part-time job or "for any type of a reliable punctual to date performance of her duties." *Id.* Dr. Jawadi opined that in an eight-hour day, Plaintiff was able to stand for less than two hours, walk for less than one hour, sit for less than 4 hours, and that she was able to stand for one hour without interruption, walk for one-half hour without interruption, and sit for four hours without interruption. *Id.* Dr. Jawadi also reported that Plaintiff was not able to lift any weight, and that she was mildly to moderately to markedly to extremely limited in her abilities to perform work-related mental activities. *Id.*

In her Statement of Specific Errors, Plaintiff alleges that the Commissioner erred by relying on the VE's testimony because it was in response to in improper hypothetical question, and by failing to give controlling weight to Dr. Jawadi's opinion. (Doc. 6).

Plaintiff argues first that the Commissioner erred by relying on the VE's testimony because it was in response to a hypothetical question that did not take into consideration her alleged mental impairment. Plaintiff's position is that Dr. Smith's and Dr. Jawadi's opinions establish that she has severe limitations from her alleged mental impairment.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

As essentially noted above, Judge Padilla did not determine that Plaintiff has a severe mental impairment. In reaching that conclusion, he noted that although Dr. Jawadi opined that Plaintiff had mental limitations, he was not a mental health expert. (Tr. 23). Judge Padilla also noted that Dr. Smith had seen Plaintiff on only two occasions in 2005 and was therefore not a significant treating source. (Tr. 22). Finally, Judge Padilla noted that there was no evidence that Plaintiff had received mental health treatment and that Dr. Schulz found few indications of a mental impairment and assigned Plaintiff a GAF of 62, indicating, at worst, a mild impairment. (Tr. 18).

As noted above, Dr. Jawadi is Plaintiff's treating endocrinologist. He is not, as Judge

8

Padilla noted, a mental health expert and his opinion as to Plaintiff's alleged mental limitations is not entitled to great, if any, weight. In addition, neither Dr. Jawadi nor Dr. Smith supported their opinions as to Plaintiff's alleged mental limitations with any objective evidence. Indeed, Dr. Jawadi's August, 2005, report refers only to Plaintiff's alleged difficulty in following his instructions, (Tr. 198), and his office notes contain no findings as to an alleged mental impairment. (Tr. 199-228). Similarly, Dr. Smith's July 28, 2005, report contains no objective findings particularly as to any alleged mental impairment, (Tr, 186), and her office notes reveal that she indicated that Plaintiff's "mental status/psychiatric" was essentially normal. (Tr. 190, 194).

Finally, as the Commissioner determined, Drs. Jawadi and Smith's opinions as to Plaintiff's limitations due to any alleged mental impairment are inconsistent with the other evidence of record. First, there is absolutely no evidence in the record that Plaintiff has received mental health treatment. Next, examining psychologist Dr. Schulz essentially opined that Plaintiff's has, at worst, mild limitations. In addition, the reviewing mental health expert determined that Plaintiff does not have a severe mental impairment. (Tr. 129-48).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Jawadi's and Dr. Smith's opinions as to limitations Plaintiff allegedly has due to a mental impairment. *See, Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994); *see also, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). Because the Commissioner properly rejected the limitations described by Drs. Jawadi and Smith, he was not required to include those limitations in the hypothetical question he propounded to the VE. Accordingly, the Commissioner did not err in this regard.

Plaintiff argues next that the Commissioner erred by rejecting Dr. Jawadi's opinion

9

that she is disabled.

Plaintiff argues next that the Commissioner erred by failing to give the proper evidentiary weight to Dr. Jawadi's opinion.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip, supra.*

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk, supra*; *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by

the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Jawadi's opinion as to Plaintiff's residual functional capacity, Judge Padilla determined that it was not supported by objective medical evidence, not supported by his office notes, and inconsistent with other evidence of record. (Tr. 22-23).

As noted above, Dr. Jawadi is Plaintiff's treating endocrinologist who treats her for her diabetes and thyroid disease. Dr. Jawadi essentially opined in August, 2005, that Plaintiff's residual functional capacity in inconsistent with an ability to perform substantial gainful activity and that she was not employable. However, Dr. Jawadi provided absolutely no objective physical findings in support of his opinion. Indeed as review of his August 8, 2005, report reveals that it primarily a recitation of Plaintiff's subjective complaints. In addition, and contrary to Plaintiff's argument, Dr. Jawadi's office notes contain few objective findings to support his opinion. For example, although he noted that Plaintiff's diabetes was poorly controlled, he consistently noted, with few exceptions, that her physical examination was within normal limits. (Tr. 205-31). In addition, in his own August, 2005, report, Dr. Jawadi noted that, "in regards to her physical conditions, [Plaintiff] appeared to be normal." (Tr. 198).

In addition to being unsupported by his own findings, Dr. Jawadi's opinion is inconsistent with other evidence of record, primarily Plaintiff self-reported activities. Plaintiff watches television, talks on the telephone, plays on the computer, attends church, attends Bible study, socializes with others, washes dishes, cleans the house, does the laundry, cooks, and shops.

11

In addition, Plaintiff sweeps, mops, runs the vacuum, goes out to eat, does crossword puzzles, and walks for exercise. In addition to being inconsistent with Plaintiff's activities, Dr. Jawadi's opinion is inconsistent with the reviewing physician's opinion. *See,* Tr. 142-47.

Under these facts, the Commissioner did not err by rejecting Dr. Jawadi's opinion that Plaintiff is disabled.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 22, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P.

5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).